**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**LAREDO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 5:18-cr-00912-S2** |
| | § | |
| **MOHAMAD MILON HOSSAIN;** | § | |
| **AKA MILON MIAH;** | § | |
| **AKA MILON MIA;** | § | |
| **AKA MILON;** | § | |
| **AKA MELON,** | § | |
| | § | |
| **Defendant.** | | |

**<u>PLEA AGREEMENT</u>**

The United States of America, by and through its attorneys, Ryan K. Patrick, United States Attorney for the Southern District of Texas, Brian A. Benczkowski, Assistant Attorney General for the Department of Justice, and undersigned counsel, along with the defendant, Mohamad Milon Hossain; AKA Milon Miah; AKA Milon Mia; AKA Milon; AKA Melon ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

**Defendant's Agreement**

1. Defendant agrees to plead guilty to Counts 1 and 16-18 of the Second Superseding Indictment. Count 1 charges Defendant with Conspiracy to Bring an Alien to the United States, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(i), 1324(a)(1)(A)(v)(I), and 1324(a)(1)(B)(i). Counts 16-18 charge Defendant with Bringing an Alien to the United States and Aiding and Abetting, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii) and

Title 18, United States Code, Section 2. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

**Punishment Range**

2. The **statutory** maximum penalty for each violation of Title 8, United States Code, Section 1324(a)(1)(A)(i), 1324(a)(1)(A)(v)(I), and 1324(a)(1)(B)(i), is imprisonment of not more than ten years and a fine of not more than $250,000.

3. The **statutory** penalty for the first and second violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii) and Title 18, United States Code, Section 2, as alleged in Counts 16 and 17, is imprisonment of not less than three years and not more than ten years and a fine of not more than $250,000.

4. The **statutory** penalty for the third or more violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii) and Title 18, United States Code, Section 2, as alleged in Count 18, is imprisonment of not less than five years and not more than fifteen years and a fine of not more than $250,000.

5. In addition to the statutory maximum penalties discussed in paragraphs 2-4 above, Defendant may receive a term of supervised release after imprisonment of up to three years. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, Sections 3559(a)(3) and 3583(e)(3).

Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

**Mandatory Special Assessment**

6. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

7. Pursuant to Title 18, United States Code, Section 3014, in addition to the assessment imposed under Section 3013, the court shall assess an amount of $5,000 because the Defendant was convicted under Section 274 of the Immigration and Nationality Act (8 U.S.C. § 1324). Such assessment may not apply if the Defendant is found to be indigent. 18 U.S.C. § 3014(a).

**Immigration Consequences**

8. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

**Cooperation**

9. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas and the Human Rights and Special Prosecution Section. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraphs 38-42 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

10. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to **<u>any</u>** criminal activity known to Defendant, including but not limited to alien smuggling. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas, the Human Rights and Special Prosecutions Section of the Department of Justice, and Defendant; it does not bind any other state or federal prosecutor's office;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

**Waiver of Appeal and Collateral Review**

11. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

12. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United

States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

13. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

**The United States' Agreements**

14. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Counts 1 and 16-18 of the Second Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the Superseding Indictment at the time of sentencing;

(b) If the Court determines that Defendant qualifies for an adjustment under Section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of Section 3E1.1(a) is 16 or greater, the United States will move under Section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

(c) The United States agrees that so long as the Defendant does not move to withdraw his plea of guilty and is in full compliance with each and every provision of this Plea Agreement, the United States will not use against the Defendant, directly or indirectly, in any criminal or in any civil proceeding, any of the information or materials provided to the United States by the Defendant during the

course of his cooperation pursuant to this Plea Agreement. However, the United States also expressly reserves its right to use against the Defendant in any criminal or civil proceeding, directly or indirectly, any information and materials provided by the Defendant, during the course of his cooperation, concerning crimes of violence, as defined in Title 18, United States Code, Section 16.

**Agreement Binding - Southern District of Texas and DOJ's Human Rights and Special Prosecutions Section Only**

15. The United States Attorney's Office for the Southern District of Texas and the Department of Justice's Human Rights and Special Prosecutions Section agree that they will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Second Superseding Indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas, the Department of Justice's Human Rights and Special Prosecutions Section, and Defendant. It does not bind any other United States Attorney's Office or any other federal or state prosecutor's office. The United States Attorney's Office for the Southern District of Texas and the Human Rights and Special Prosecutions Section will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

**United States' Non-Waiver of Appeal**

16. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with Section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

17. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offenses to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

**Rights at Trial**

18. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

**Factual Basis for Guilty Plea**

19. Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts 1 and 16-18 of the Second Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offenses beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

20. From in or about March 2017 through in or about June 2019, the Defendant conspired with and assisted alien smugglers operating out of Bangladesh, South and Central America, and Mexico to bring numerous illegal aliens to the Southern District of Texas within the United States, for the purpose of commercial advantage or private financial gain. The Defendant knew that those illegal aliens had not received prior official authorization to come to, enter, and reside in the United States. The Defendant arranged for the aliens to be brought to a place that was not a designated port of entry, where the aliens waded or swam across the Rio Grande River from Mexico into the United States.

21. Through the course of this conspiracy, the Defendant worked with other smugglers, such as Defendant Moktar Hossain and Saifullah Al-Mamun, who assisted in housing, feeding,

and arranging transport for illegal aliens en route to the U.S. Among other things, the Defendant assisted aliens traveling from Tapachula, Mexico, to Monterrey and other locations in northern Mexico. Once the aliens arrived in Tapachula, Mexico, the Defendant arranged for the aliens to be transported to a hotel in Tapachula where the Defendant housed them and provided them with food. The Defendant prepared the aliens to travel to Monterrey and then to the U.S./Mexico border. The Defendant provided the aliens with plane tickets to Monterrey and paid drivers to transport the aliens to the Tapachula airport, where they departed for Monterrey. The Defendant provided aliens with a phone number to call when they arrived in Monterrey. The Defendant told aliens that after being brought to northern Mexico, the aliens would be taken to the river (referring to the Rio Grande) where they would cross into the United States. The actions undertaken by the Defendant and co-conspirators such as Defendant Moktar Hossain and Saifullah Al-Mamun in furtherance of their smuggling enterprise were done in exchange for payment.

22. Specifically, on or about March 14, 2018, an individual referred to in the Second Superseding Indictment as "HB" crossed the Rio Grande River from Mexico into the United States. HB is a Bangladeshi national with no legal right to come to, enter or reside in the United States. HB's journey to the United States began in Bangladesh in 2017. With the assistance of smugglers, HB made his way to South America and traversed the Darien Gap from Colombia to Panama over the course of six days. HB then traveled through Central America to Tapachula, Mexico. After staying in the immigration camp in Tapachula for several days, HB went to a restaurant run by the Defendant. The Defendant informed HB that "Babu Bai" (Moktar Hossain) had arranged for HB's room and food. The Defendant then took HB to a hotel in Tapachula. While at the hotel, unknown individuals came to the hotel room and assaulted HB in retaliation for HB complaining

to Hossain earlier in the trip. When HB mentioned the assault to the Defendant, the Defendant responded that it may happen again if HB kept talking. After several days, the Defendant provided HB with plane tickets to Monterrey, Mexico, and put HB in a taxi cab which took HB to the Tapachula airport. HB then flew to Monterrey via Mexico City. HB was then taken to a hotel in Monterrey, and was subsequently driven with three other Bangladeshis to the Rio Grande. Upon arriving at the river, the driver told HB and the others to get out of the vehicle or he would shoot them. The group then went to the river and swam across. While swimming, HB hit his head on a rock and had difficulty crossing the river. HB was subsequently apprehended by Border Patrol.

23. On or about August 16, 2018, an individual referred to in the Second Superseding Indictment as "NU" crossed the Rio Grande River from Mexico into the United States. NU is a Bangladeshi national with no legal right to come to, enter or reside in the United States. NU's journey to the United States began in Bangladesh. With the assistance of smugglers, NU made his way to South America and traversed the Darien Gap from Colombia to Panama. The journey through the Darien jungle took five or six days, during which time NU was not provided with food or water. NU then traveled through Central America to Tapachula, Mexico. After staying in the immigration camp in Tapachula for several days, NU went to a hotel run by the Defendant where the Defendant provided NU with food and lodging. After several days, the Defendant explained to NU where he would travel in Mexico, and provided NU with a plane ticket to Monterrey. The Defendant informed NU that someone would meet him in Monterrey and would talk to him about traveling to the United States. Once arriving in Monterrey, NU called a phone number given to him by the Defendant. Moktar Hossain answered the phone, and arranged for NU to be taken to

a hotel run by Hossain. Hossain informed NU that the river (referring to the Rio Grande) would only be waist deep, and that NU should cross the river quickly. Hossain put NU and other aliens in a car which took them to the river. Upon arriving at the river, the driver motioned toward the river and NU and the other aliens got out of the car and crossed the river. The river was very deep and had a strong current. The group of aliens were apprehended by Border Patrol shortly thereafter.

24. On or about August 16, 2018, an individual referred to in the Second Superseding Indictment as "MFH" crossed the Rio Grande River from Mexico into the United States. MFH is a Bangladeshi national with no legal right to come to, enter or reside in the United States. MFH's journey to the United States began in Bangladesh. With the assistance of smugglers, MFH made his way to South and Central America, and eventually to Tapachula, Mexico. MFH stayed in the immigration camp in Tapachula for several days, and then went to a hotel run by the Defendant. The Defendant provided MFH with food and with plane tickets to Monterrey, where the Defendant told MFH he would meet Defendant Hossain. MFH then traveled to Monterrey with other aliens and were transported to a hotel managed by Defendant Hossain. Hossain told MFH that the water level in the river (referring to the Rio Grande) would only be knee deep. Hossain then put MFH and other aliens into a car which drove them to the Rio Grande. MFH and the others crossed the river, which was very deep and difficult to swim across. MFH was apprehended by Border Patrol shortly thereafter.

25. Upon the Defendant's arrest, the Defendant was apprised of his rights under *Miranda* and chose to make a statement. He admitted he worked with several individuals including Defendant Hossain, two individuals named "Saiful" (one referred to as "limping Saiful"

and the other as "Saiful Feni"), and others in an effort to bring illegal aliens to the United States. The Defendant indicated he was paid for his role in the offense, and that he and the other smugglers he worked with knew that their activities were illegal.

**Breach of Plea Agreement**

26. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

**Restitution, Forfeiture, and Fines – Generally**

27. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

28. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by

the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

29. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

30. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

**Restitution**

31. Defendant agrees to pay full restitution to the victims regardless of the counts of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victims. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 9 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

**Forfeiture**

32. Defendant stipulates and agrees that the property listed in the Second Superseding Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property. Defendant stipulates and agrees that any substitute assets are subject to forfeiture and he agrees to forfeit that property at the date of sentencing.

33. Defendant stipulates and agrees that the factual basis for his guilty plea supports the forfeiture of a money judgment to be argued by the United States, and to be left to the Court's discretion. Defendant agrees to the imposition of any personal money judgment ordered by the Court against him and in favor of the United States of America. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, Section 853(p), exists. Defendant agrees to forfeit any of his property, or his interest in property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied.

34. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

35. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

36. Subject to the provisions of paragraph 9 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

## Fines

37. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 9 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

38. This written plea agreement, consisting of 19 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

39. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Laredo, Texas, on March 5, 2020.

MILON
_______________________
Mohamad Milon Hossain
Defendant

Subscribed and sworn to before me on March 5, 2020.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _______________________
Deputy United States District Clerk

APPROVED:

RYAN K. PATRICK
United States Attorney

By: _______________________
Jose Homero Ramirez
Assistant United States Attorney

_______________________
Adrian Chapa
Attorney for Defendant

BRIAN BENCZKOWSKI
Assistant Attorney General
Department of Justice

By: _______________________
James Hepburn
Erin Cox
Trial Attorneys
Human Rights and Special Prosecutions Section